# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TEXTRON FINANCIAL CORPORATION,
a Delaware Corporation,

            **Plaintiff,**

-vs-                                Case No.  6:09-cv-1210-Orl-28DAB

WAYNE R. LONGSTREET, d/b/a
LONGSTREET RVS, also d/b/a
LONGSTREET RV'S, and also d/b/a
LONGSTREET RV SALES,

            **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed

herein:

> **MOTION:** **MOTION FOR DEFAULT JUDGMENT (Doc. No. 39)**
>
> **FILED:** **December 4, 2009**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part
> and **DENIED** in part.

As reflected in the docket, Plaintiff (herein "TFC") filed a Verified Complaint asserting breach

of contract and seeking damages and replevin of certain collateral (Doc. No. 1).  On July 17, 2009,

Plaintiff filed a Motion for Temporary Restraining Order, Emergency Supplemental Motion for Writ

of Replevin, and supporting declaration and affidavit (Doc. Nos. 13-14).  The Court granted these

motions (Doc. Nos. 19- 20), and Defendant was served with the Summons, Complaint, motions, and

the Orders granting the motions (Doc. Nos. 23 and 29). No response was filed to the Complaint, and

a Clerk's default was entered on August 11, 2009 (Doc. No. 30-31). Plaintiff represents that

subsequent to service of process, it recovered its collateral from Defendant and, during a limited

abatement period, sold the recovered inventory. The instant motion for entry of a default final

judgment follows.

### *The Allegations of the Complaint*

The Verified Complaint alleged that Defendant entered into a Wholesale Security Agreement

("WSA") and Finance Plan with TFC on or about July 1, 2002. Verified Compl. ¶¶ 5, 7. In Count I,

Plaintiff alleged breaches of these agreements, and asserted that Defendant owed:

(1) $5,840.80 for Interest and Charges (Verified Compl. ¶ 11);

(2) $12,242.00 for one item of Inventory sold out of trust (Verified Compl. ¶¶ 13-14);

(3) $156,131.96 for unpaid principal (Verified Compl. ¶ 20); and

(4) Attorneys fees, costs, and expenses (Verified Compl. ¶ 22).

In Count II, Plaintiff alleged that the WSA entitled it to repossession of certain personal

property, and alleged that Defendant was obligated to pay all expenses associated with TFC's

repossession of the Property (Verified Compl. ¶ 34).

### *Standards of Law*

The effect of the entry of a default is that all of the factual allegations in the Complaint are

taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the

complaint, it is established by the entry of a default. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th

Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint

provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston*

*National Bank,* 515 F. 2d 1200, 1206 (5th Cir. 1975). If the amount of damages sought are not specified in the complaint, Plaintiff must prove up the unliquidated sums, in a hearing on damages or otherwise. Rule 55(b)(2), Federal Rules of Civil Procedure.

*Analysis*

The Complaint alleges that Defendant breached certain agreements and, taking these allegations as true, the Court finds liability has been admitted due to the default. As for damages, the Complaint stated *specific* amounts alleged to be due, as well as certain unliquidated attorney's fees and expenses. Applying the above standard, one would ordinarily be entitled to a judgment in these specified amounts. Subsequent to the filing of the Complaint, however, Plaintiff received some of the relief it sought by repossessing the property and selling it, applying the proceeds to the sought after amount. The supporting papers filed with the motion also reflect that after the Complaint was filed and served, Plaintiff discovered that Defendant sold two additional items of Inventory out of trust. Thus, the instant motion and supporting papers request a judgment for amounts that differ from the amounts set forth in the Complaint. The Court addresses each item, in turn, as they are presented in the motion.

*Principal Due on Inventory Sold Out of Trust*

As noted above, the Complaint asserts that one item of Inventory was sold out of trust, and Plaintiff was damaged in the amount of $12,242.00. The motion, however, states that after the filing of the Complaint, Plaintiff discovered that Defendant had sold two additional items of Inventory out of trust, bringing the total due on Inventory sold out of trust to $30,714.50. Plaintiff contends that, as the unchallenged Complaint establishes that Defendant defaulted on the Security Agreement by failing to remit payment upon the sale of items of Inventory, the Court should find that Plaintiff is entitled to final judgment for the $30,714.50 in Inventory sold out of trust.

The Verified Complaint provided a specific amount of damage with respect to Inventory sold out of trust: $12,242.00. While the Court understands that subsequent to the filing of the pleadings new information came to light to increase that amount, that fact is of no moment here as Plaintiff did not amend the Complaint to change the amount sought and did not serve that amended pleading upon Defendant. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Rule 54(c), Federal Rules of Civil Procedure. As such, Plaintiff is entitled to $12,242.00 for Inventory sold out of trust, *not* the $30,714.50 now claimed.[1]

*Interest and Charges*

The Complaint alleges that Plaintiff

currently owes . . . unpaid interest and charges in the amount of $5,840.48 as of June 30, 2009. This amount represents unpaid and past due interest and fees from April and May of 2009, as well as current interest and fees for June 2009.

Verified Complaint ¶ 11. Plaintiff also asserted that it had accelerated the payment of all sums due and "is demanding payment of the entire amount due . . . as of June 30, 2009 in the total sum of $161,972.44 (representing principal of $156,131.96, plus interest and charges of $5,840.48), plus accruing interest, charges, fees and costs thereafter." *Id.* at ¶20.

In the current motion, Plaintiff contends that "interest has continued to accrue" on Defendant's account, and Plaintiff has filed two Affidavits which aver that interest and fees "continued to accrue" and the total outstanding interest and fees due as of October 31, 2009 is $8,789.41. *See* Doc. No. 39-2, 39-3 (Herman Aff. ¶ 6; Kaminski Aff. ¶ 9).

Plaintiff elected (as was its right under the WSA) to accelerate the balance due, upon the default of Defendant. Thus, Plaintiff itemized its claim in the Complaint as one for $156,131.96

---

[1] If appropriate, Plaintiff may seek to amend its motion, adding the balance due on the additional vehicles sold out of trust to the deficiency. This would keep the requested default judgment within the parameters pled in the Complaint.

principal and $5,840.48 interest and charges. Although Plaintiff asserts that it is entitled to interest that accrued from that acceleration date, the proof filed does not detail the source of that entitlement, nor does it establish exactly how that rate was reached.[2] On this record, Plaintiff has only established entitlement to the interest amount specified in the Complaint.

*Deficiency Principal Owed on Recovered Inventory*

Plaintiff has established that it repossessed certain collateral and was able to sell same in a commercially reasonable manner, thus reducing the principal amount due to $39,742.46. Judgment in this amount is appropriate.[3]

*Expenses, Costs and Legal Fees*

Plaintiff pled that the agreements entitle it to recover attorney's fees, costs and expenses, and that entitlement is established through the default. Such expenses and costs, however, must still be reasonable. As set forth in the Kaminski Affidavit, Plaintiff has incurred $20,891.00 in attorneys fees as of November 18, 2009, $620.00 in court costs and fees, and $2,092.00 in fees associated with the Replevin bond. *See* Kaminski Aff. ¶¶10-11; Affidavit of Time Spent and Costs Incurred- Doc. No. 39-5. While the Court finds the court costs and bond fees to be reasonable and recoverable, it cannot recommend that the Court award the full amount of attorney's fees sought.

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d. 776, 781 (11th Cir.

---

[2] According to the Finance Plan (Doc. No. 1-4), the Interest Rate is calculated at various times and amounts as set forth in the applicable Statement of Financial Transaction. While these amounts were itemized prior to the acceleration, in his Affidavit, Mr. Herman notes that monthly inventory billing statements were "no longer updated" with interest and fees following the filing of the suit (Doc. No. 39-3 at 2). The Affidavit of Mr. Kaminski attaches a spreadsheet that purports to show the accrual of interest and fees that remain outstanding (Doc. No. 39-2, Exhibit C), but the spreadsheet does not indicate the source of the interest rate, which Plaintiff refers to as "the lowest allowed interest rate." (Doc. No. 39-2 at 17).

[3] Although the Complaint specifies a different amount for unpaid principal, the amount sought is far less than pled, due to the sale of the collateral being properly applied to reduce the principal. As the final amount sought in the motion does not exceed the amount pled for this element of damages, Rule 54(c) is not implicated.

1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

It is presumed that most or all of the following factors are subsumed in the calculation of the lodestar: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988), (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)) The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d 1292 at 1303. With respect to rates, an applicant may meet his or her burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 434.

As set forth in counsel's Affidavit, Plaintiff's law firm spent well over 50 hours "to prosecute the above-styled lawsuit," using seven professionals at rates ranging from $110 (paralegal) to $540 per hour (Doc. No. 39-5). There is no showing that these rates reflect the prevailing market rate in this community, especially for a case that was never tried or contested. As this Court has previously noted, while Plaintiff (or any party for that matter) has the right to the services of any counsel it chooses, when, as here, the cost of counsel is to be visited on another party, that right is not unfettered. *WHM LLC v. National Ass'n of Certified Home Inspectors*, 2008 WL 5147367, 3 (M.D. Fla. 2008). Here, there is no showing that it was necessary to utilize seven professionals at these rates for the work at hand.

As for the number of hours, the tasks performed are not itemized (a fatal flaw under *Norman, supra*), but the Court takes notice of the fact that Defendant made no appearance in this litigation, there were no hearings held, nor any mediation or discovery disputes presented. Absent special circumstances which are not present here, and without any evidence as to the *Johnson* factors, the Court finds that twenty thousand dollars is an excessive amount to obtain a default judgment in a business litigation case in this district.

Absent an itemization of the tasks performed, the Court uses its own judgment, *Norma, supra,* and recommends no more than $10,000.00 for legal fees.

### Recommendation

For the reasons set forth above, the Court **respectfully recommends** that the motion be **granted, in part, and denied, in part** and that a default judgment be entered in the total amount of $ 70,536.94 ($12,242.00 for inventory sold out of trust + $5,840.48 in interest + $39,742.46 for

principal balance deficiency + $10,000.00 in attorney's fees + $620.00 in court costs and fees + $2,092.00 in fees associated with the Replevin bond).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 7, 2010.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy